# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JOHN PRIESTER, JR., BETTIE PRIESTER, | § § | |
| v. | § § | Civil Action No. 4:16-CV-449 |
| LONG BEACH MORTGAGE COMPANY, JPMORGAN BANK, N.A., ALAMO TITLE COMPANY, DEUTSCHE BANK NATIONAL TRUST COMPANY, SELECT PORTFOLIO SERVICES, INC., CRISTOBAL M. GALINDO, PC, GALINDO LAW & TITLE, GALINDO CRISTOBAL TITLE SERVICES, CRISTOBAL M. GALINDO, KRISTEN TINSLEY | § § § § § § § § § § § | (Judge Mazzant/Judge Nowak) |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On December 16, 2016, the report of the Magistrate Judge (Dkt. #55) was entered containing proposed findings of fact and recommendations that Plaintiffs' Motion to Remand (Dkt. #8) be denied, and that Defendants Cristobal Galindo, PC, Galindo Law & Title, Galindo Cristobal Title Services, Cristobal Galindo, Alamo Title Company, Kristen Tinsley (collectively, the "Non-Diverse Defendants") each be dismissed without prejudice. The Magistrate Judge further recommended that the Motion for Default Judgment (Dkt. #12), the Galindo Defendants' Motion to Dismiss (Dkt. #24), the Alamo Title Motion to Dismiss (Dkt. #26), the Tinsley Motion to Dismiss (Dkt. #27), and the Motion for Leave (Dkt. #52) each be denied as moot. Having received the report and recommendation of the Magistrate Judge (Dkt. #55), having considered Plaintiffs' timely filed objections (Dkt. #56), Defendants Deutsche Bank National Trust Company's and

Select Portfolio Servicing, Inc.'s Response to Plaintiffs' Objections (Dkt. #57), Defendants Cristobal Galindo, PC's, Cristobal Galindo's, Galindo Law & Title's, Galindo Cristobal Title Services' Response to Plaintiffs' Objections (Dkt. #58), and Defendant Alamo Title Company's Response to Plaintiffs' Objections (Dkt. #59), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #55) as the findings and conclusions of the Court.[1]

## BACKGROUND

In late 2005, Plaintiffs Bettie and John Priester ("Plaintiffs") acquired from Long Beach[2] a home equity loan secured by a first lien on their home. *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 671 (5th Cir. 2013). Nearly five years later, in mid-2010, Plaintiffs sent Long Beach (and subsequently Chase, which had acquired the loan) a letter requesting that Long Beach and/or Chase "cure" alleged constitutional deficiencies with the home equity loan. *Id.* Plaintiffs alleged they had only just discovered such deficiencies. Chase took no action to remedy the alleged deficiencies, and, as a result, Plaintiffs sued Chase (and various others) in state court, seeking declaratory judgment. *Id.* Specifically, Plaintiffs asserted "that the closing of the loan occurred in their home rather than at the office of an attorney, the lender, or a title company as required by the Texas Constitution[] . . . [and] that they did not receive notice of their rights twelve days before closing as required by the state constitution." *Id.* Chase then removed to federal court and, after

---

[1] For ease of reference, the Court will refer to the following entities throughout this Memorandum as follows: Long Beach Mortgage as "Long Beach"; JPMorgan Chase Bank, N.A. as "Chase"; Deutsche Bank National Trust Company as "Deutsche Bank"; Select Portfolio Servicing, Inc. as "SPS"; Cristobal Galindo, PC, Galindo Law & Title, Galindo Cristobal Title Services, and Cristobal Galindo collectively as the "Galindo Defendants"; Alamo Title Company as "Alamo Title"; Kristen Tinsley as "Tinsley"; the Galindo Defendants, Alamo Title, and Tinsley collectively as the "Non-Diverse Defendants"; and Long Beach, Chase, Deutsche Bank, and the Non-Diverse Defendants collectively as "Defendants."

[2] As the Magistrate Judge notes (Dkt. #55 at 2 n.1), the Notice of Removal indicates Long Beach "no longer exists as a separate entity because it merged into Washington Mutual Bank, whose certain assets and liabilities were acquired by [Chase]" (Dkt. #1 at 3). Chase has appeared in neither the underlying state court proceeding nor in this proceeding.

2

the district court granted Chase's motion to dismiss and the Fifth Circuit affirmed, Plaintiffs' case was dismissed. *Id.* at 672, 679. In October 2013, the U.S. Supreme Court denied Plaintiffs' writ of certiorari (*see* Dkt. #62 in Case No. 4:10-cv-641).[3]

Subsequently, on November 26, 2014, Deutsche Bank[4] filed an application for an expedited order of foreclosure under Texas Rule of Civil Procedure 736 ("Rule 736") seeking an order permitting it to proceed with foreclosure of Plaintiffs' home (hereinafter the "Original State Court Action") (*see* Register of Actions in Case No. 429-04751-2014 in the 429th District Court of Collin County, Texas). The parties to the Original State Court Action included Deutsche Bank (as applicant), the current occupant of the home (as defendant), and Plaintiffs (as defendants). After conducting a hearing, the state court ordered expedited foreclosure on March 15, 2016.

Pursuant to Rule 736.11, Plaintiffs initiated a separate proceeding on June 6, 2016, challenging the propriety of Deutsche Bank's foreclosure and seeking to stop enforcement of the March 15 foreclosure order (hereinafter the "Second State Court Action") (*see* Dkt. #3). Plaintiffs argued in the Second State Court Action the same constitutional issues raised in the Original Federal Action[5] and also asserted that Defendants acted in concert to induce Plaintiffs to close and sign loan documents and security instruments in violation of the Texas Constitution (Dkt. #3 at 9-13). Specifically, Plaintiffs alleged as follows:

---

[3] The Court refers to this set of proceedings collectively and hereinafter as the "Original Federal Action."
[4] Deutsche Bank proceeds here "as Trustee, in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-1, Asset Backed Certificates, Series 2006-1 . . ." (Dkt. #1).
[5] The Court notes that the Texas Supreme Court decided *Wood v. HSBC Bank USA, N.A.*, ___ S.W.3d ___, No. 14-0714, 2016 WL 2993923 (Tex. Dec. 8, 2015), and *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474 (Tex. 2016), in the interim. Plaintiffs asserted before the Magistrate Judge that these cases revived the constitutional claims denied by the Fifth Circuit previously, while Defendants contended that, even if such claims were revived, they would have no bearing on the Court's resolution of the Motion for Remand. The Court evaluates these arguments *infra*.

> Plaintiffs allege the loan closing took place at their home (in violation of Texas Constitution article XVI, section 50(a)(6)(N)) and that "they were not provided the notice, prescribed by [Texas Constitution article XVI, section 50(g)], at least twelve (12) days before the [l]oan closing took place." *Id.* at 10-11. Plaintiffs claim they first discovered these violations when they "visited an attorney regarding their home equity [l]oan with Long Beach" on July 16, 2010. *Id.* at 11. Plaintiffs thereafter notified Long Beach (and its successor-in-interest, Chase) of alleged deficiencies in the loan and security instruments; Plaintiffs assert that, following such notice, neither complied with the remedial provisions of Texas Constitution article XVI, section 50(a)(6)(Q)(x). *Id.* at 12-13. In addition, Plaintiffs allege (1) Long Beach and Chase defamed Plaintiffs, *id.* at 15-16, (2) all Defendants fraudulently concealed the purported deficiencies in the loan and security instruments, *id.* at 16-20, (3) the Non-Diverse Defendants and Long Beach committed fraud by nondisclosure, *id.* at 20-23, (4) the Galindo Defendants committed common law fraud, *id.* at 24-25, (5) the Non-Diverse Defendants and Long Beach negligently misrepresented that neither of the deficiencies alleged here marred the loan or security instruments, *id.* at 25-30, and (6) all Defendants breached "a valid and enforceable written contract" requiring compliance with the Texas Constitution, *id.* at 30-31. *See also id.* at 31-32 (alleging the "discovery rule" applies to toll the statute of limitations on Plaintiffs' claims).

(Dkt. #55 at 3-4). Plaintiffs named Deutsche Bank, SPS, Chase, Long Beach, and the Non-Diverse Defendants as defendants in the Second State Court Action, alleging that Plaintiffs themselves are Texas citizens and that the Non-Diverse Defendants each are also Texas citizens. As to the remaining Defendants, Plaintiffs alleged Long Beach is a citizen of Delaware and Washington, SPS is a citizen of Utah and Connecticut, and Deutsche Bank and Chase are national associations not citizens of Texas (Dkt. #3 at 6-8).

Deutsche Bank and SPS removed the Second State Court Action to this Court on June 27, 2016, asserting this Court has diversity jurisdiction under 28 U.S.C. § 1332 because the Non-Diverse Defendants "are improperly joined to this action and should be disregarded for diversity jurisdiction purposes" (Dkt. #1). Plaintiffs filed a Motion to Remand on July 19, 2016, arguing the Non-Diverse Defendants are proper parties to this action, the Notice of Removal fails sufficiently to plead improper joinder, and the Defendants have waived any right to remove by participating substantively in the Original State Court Action (Dkt. #8). On August 5, 2016,

4

Deutsche Bank and SPS filed their response (Dkt. #20). Upon referral to the Magistrate Judge, the Magistrate Judge held a hearing ("Hearing") on Plaintiffs' Motion to Remand and subsequently entered the Report and Recommendation on December 16, 2016 (Dkt. #55). Therein the Magistrate Judge recommended that the Court deny Plaintiffs' Motion to Remand and dismiss without prejudice each of the Non-Diverse Defendants from this action (rendering moot their respective motions to dismiss and Plaintiffs' Motion for Default Judgment) (Dkt. #55). Plaintiffs filed timely objections to the Report and Recommendation on December 22, 2016 (Dkt. #56), and Defendants Deutsche Bank and SPS filed a response on January 4, 2017 (Dkt. #57). The Galindo Defendants and Alamo Title each filed responses incorporating Deutsche Bank's and SPS's response to Plaintiffs' objections (Dkts. #58-59).

**OBJECTIONS**

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3). Plaintiffs object specifically to the Magistrate Judge's Report and Recommendation as follows: (1) the Magistrate Judge ignores the requirement to "plead with particularity" set forth in *Parks v. New York Times Co.*, 308 F.2d 474 (5th Cir. 1968), in determining that Defendants adequately pleaded improper joinder in their Notice of Removal; (2) the Magistrate Judge glazes over the procedural nuances of Rule 736 in determining Defendants did not waive their right to removal; and (3) the Magistrate Judge fails to apply equitable tolling doctrines so as to effectuate the principle that courts should resolve doubts regarding whether removal jurisdiction is proper in favor of the party seeking remand (Dkt. #56). The Court considers each objection in turn.

*Objection 1: Improper Joinder Pleading Requirements*

Plaintiffs assert that the Magistrate Judge "attempts to sweep aside binding Fifth Circuit precedent requiring parties seeking removal to plead with particularity and support claims of improper or fraudulent joinder to state their claims with clear and convincing evidence[,]" citing *Parks* in support (Dkt. #56 at 1-2). Plaintiffs contend that *Parks* mandates this Court require Defendants to plead improper joinder with particularity (Dkt. #56 at 1-2). Defendants argue in response that the *Parks* requirement to "plead with particularity" does not apply any longer, as Congress abrogated such requirement in 1988 when it amended the removal statute, 28 U.S.C. § 1446(a). Defendants assert the U.S. Supreme Court decision *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014), further makes such abrogation clear.

To begin, a defendant may establish improper joinder either by showing (1) actual fraud in the plaintiff's pleading of jurisdictional facts or (2) the plaintiff's inability to establish a cause of action against the non-diverse defendant(s) in state court. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1, 573 (5th Cir. 2004) (finding courts should use the term "improper joinder" rather than "fraudulent joinder" even though "there is no substantive difference between the two"). Regarding the second method of establishing improper joinder, a court must ask "whether the defendant has demonstrated there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* at 573 (noting as well that "we adopt this phrasing of the required proof and reject all others" for such analysis); *see Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-08 (5th Cir. 2016) (outlining the proper joinder analysis after *Smallwood* and reiterating that the Fifth Circuit has adopted *Smallwood*'s "phrasing of the required proof and reject[ed] all others").

Turning to Plaintiffs' argument, the Fifth Circuit found in the 1962 case *Parks v. New York Times Co.* that "[a] claim of [improper] joinder must be pleaded with particularity, and supported by clear and convincing evidence." 308 F.3d 474, 478. The Court cited for this proposition *McLeod v. Cities Service Gas Co.*, 233 F.2d 242 (10th Cir. 1956), which "h[eld] that bad faith in joining a resident defendant for the sole purpose of preventing removal may be shown by any means available but must be proven with certainty." *Id.* Continuing, the Court explained:

> We pointed out in *Bentley v. Halliburton Oil Well Cementing Company*, 5 Cir., 1949, 174 F.2d 788, that the doctrine of [improper] joinder had its inception in the courts, and originally was a judicial pronouncement intended to protect non-resident defendants from any misstatement of fact or misjoinder of parties or causes of action knowingly made by plaintiffs for the purpose of conferring jurisdiction upon or defeating removal to a federal court.

*Id.* Courts in this circuit also have cited the later case of *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181 (5th Cir. 1990), for this same proposition. In *Grassi*, the Fifth Circuit focused on the difference between improper joinder allegations and those of collusive assignment, and implied that the particularity requirement remained viable at such time—"[plaintiffs] likewise point out that claims of fraudulent joinder must be plead[ed] with particularity and proved by clear and convincing evidence." 894 F.2d at 186. Notably, *Grassi* also further clarified the application and scope of this requirement. In relevant part, the Court found:

> The first issue involved in resolving an allegation of fraudulent joinder is whether the plaintiff has stated a claim against the nondiverse defendant. . . .
>
> If, in a fraudulent joinder case, a claim is found to have been stated against a nondiverse defendant, the only way to attack the joinder is by proving fraud in the plaintiff's pleading of jurisdictional facts. *Id.* at 549. As with any allegation of fraud, it must be proved by clear and convincing evidence. . . .

*Id.* This application dovetails with the Fifth Circuit's discussion of *Smallwood* in *International Energy Ventures*, which held that federal, not state, pleading standards apply to the improper joinder analysis after *Smallwood*. 818 F.3d at 200-08. The Fifth Circuit found in that opinion that

7

"Rule 8 [the general pleading standard] and—in specific circumstances—Rule 9 [for pleading special conditions, such as fraud] provide the statutory component of the federal pleading standard" while "Rule 12(b)(6) provides the one and only method for testing whether that standard has been met." *Id.* at 204. Placing this finding in the context of improper joinder, the Court then held that, where the defendant argues the "inability of the plaintiff to establish a cause of action against the nondiverse party in state court" (rather than arguing "actual fraud in the pleading of jurisdictional facts"), a district court should only ask whether "there is no reasonable basis for [it] to predict that the plaintiff might be able to recover against an in-state defendant" before dismissing such defendant from the lawsuit. *Id.* at 205. The Fifth Circuit made clear that, in conducting this inquiry, the district court "decides only that it has jurisdiction over the plaintiff's claims against the diverse defendants—not that the plaintiff does not have a claim at all against the nondiverse defendant[s]." *Id.* In light of this holding and *Grassi*'s application of *Parks*, the Court finds the particularity requirement applies, if at all, only to those situations where a defendant alleges actual fraud in the pleadings.

Defendants argue, however, that *Parks* has been wholly, not merely partially, abrogated. Indeed, in 1988, Congress amended the relevant removal statute, 28 U.S.C. § 1446, to read in relevant part as follows:

> A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the *grounds for removal*, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a) (2012) (emphasis added). Prior to this amendment, and when the Fifth Circuit decided *Parks*, Section 1446(a) required a removing defendant to file "a verified petition containing a short and plain statement of *the facts which entitle him . . . to removal . . . .*" Pub. L.

8

No. 80-773, § 1446 (1948), 62 Stat. 869, 939 (emphasis added). In *Dart Cherokee*, a Class Action Fairness Act case, the U.S. Supreme Court specifically commented on the 1988 amendment:

> By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure. See 14C C. Wright, A. Miller, E. Cooper, & J. Steinman, Federal Practice and Procedure § 3733, pp. 639–641 (4th ed. 2009) ("Section 1446(a) requires only that the grounds for removal be stated in 'a short and plain statement'—terms borrowed from the pleading requirement set forth in Federal Rule of Civil Procedure 8(a)."). The legislative history of § 1446(a) is corroborative. Congress, by borrowing the familiar "short and plain statement" standard from Rule 8(a), intended to "simplify the 'pleading' requirements for removal" and to clarify that courts should "apply the same liberal rules [to removal allegations] that are applied to other matters of pleading." H.R.Rep. No. 100–889, p. 71 (1988). See also *ibid.* (disapproving decisions requiring "detailed pleading").

135 S. Ct. 547, 553. The Court then determined that, with regard to the amount-in-controversy requirement, "a defendant's notice of removal need only include a plausible allegation" and that "evidence establishing the amount is required [by statute] only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554. Although the Court concluded as much in a distinguishable procedural context, Congress's intent as reflected in the 1988 legislative history—to "simplify the 'pleading' requirements for removal"—clearly implicates removal pleading standards more broadly. *See* H.R. Rep. 100-889, at 71 (1998), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6031-32. Congress expressly retreated from "[t]he [then] present requirement that the petition of removal state the facts supporting removal" because this requirement "ha[d] led some courts to require detailed pleading." *Id.* In light of the fact that "[m]ost courts[] . . . [were] apply[ing] the same liberal rules that are applied to other matters of pleading[,]" Congress amended the statute to "require[] that the grounds for removal be stated in terms borrowed from the jurisdictional pleading requirement establish by civil rule 8(a)." *Id.* This history alongside the U.S. Supreme Court's recent interpretation of the statute leads the Court to question the continuing viability of the *Parks* particularity requirement.

Since *Dart Cherokee*, courts in this circuit have cited *Parks* inconsistently and for varied purposes. While at least one court has declined to observe it, finding the standard outmoded and not widely adopted, *see Richard v. Geovera Specialty Ins. Co.*, No. 4:16-CV-2496, 2016 WL 6525438, at *2 n.12 (S.D. Tex. Nov. 3, 2016) (Atlas, J.), others cite it apparently as a matter of course, *see, e.g.*, *Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 558 & n.16 (S.D. Tex. Jan. 23, 2015) (Harmon, J.) (reciting the particularity requirement but providing little analysis as to whether it was met); *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 & n.11 (5th Cir. 2016) (citing *Parks* but applying the framework articulated in *Smallwood* in determining whether the status of defendants as either properly or improperly joined).[6] Given both *Grassi*'s, *Smallwood*'s, and *International Energy Ventures*' distinction between the two methods for proving improper joinder (either by showing actual fraud in the pleadings or by showing the plaintiff has no viable claim against the non-diverse defendants), *see Grassi*, 894 F.2d at 186, and the U.S. Supreme Court's recent decision in *Dart Cherokee*, the Court finds Defendants' argument that *Parks* has been largely abrogated convincing. The Court finds that *Parks* does not remain the rule in cases where a defendant argues improper joinder because "the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse"; the Court expresses no opinion as to *Parks*'s viability in cases where the defendant argues improper joinder because "the plaintiff *has* stated a claim against a diverse defendant he fraudulently alleges is nondiverse[] . . . ." *See Int'l Energy Ventures*, 818 F.3d at 199. Notwithstanding such findings, the Court also holds Defendants' Notice of Removal herein adequately alleges improper joinder under *Parks*.

---

[6] The Court observes similar dissonance in pre-*Dart Cherokee* decisions, as well. *See, e.g.*, *Hampton v. Harris*, No. 3:96–CV–2458–P, 1997 WL 102472, at *2 (N.D. Tex. 1997) (reciting the requirement but providing no analysis on the point); *Kasprzak v. Am. Gen. Life & Acc. Ins. Co.*, 914 F. Supp. 144, 146 (E.D. Tex. 1996) (citing *Parks* solely for the parallel proposition that improper joinder must be proved with clear and convincing evidence); *In re Norplant Contraceptive Prods. Liab. Litig.*, 898 F. Supp. 426, 428 (E.D. Tex. 1995) (same).

The Magistrate Judge found that, if the *Parks* particularity requirement has survived, Defendants met such requirement here, noting "the Notice of Removal makes clear that Deutsche [Bank] and SPS allege removal is appropriate notwithstanding the Non-Diverse Defendants because '[t]here is no possibility that Plaintiffs can maintain a cause of action against the [Non-Diverse Defendants]'" (*see* Dkt. #55 at 6 n.3). To be clear, Defendants allege in their Notice of Removal that "[t]here is no possibility Plaintiffs can maintain a cause of action against the [Non-Diverse Defendants]" and that "[a]s such, [the Non-Diverse Defendants] are improperly joined to this action and can be disregarded for diversity purposes" (Dkt. #1 at 4). While the mere allegation that "Plaintiff uses fraudulent, improper joinder" to defeat jurisdiction would fail the particularity requirement, *see Honey Holdings I, Ltd.*, 81 F. Supp. 3d at 558 n.16, Defendants in this case properly pleaded the "grounds for removal" in alleging Plaintiffs could not possibly maintain an action against the Non-Diverse Defendants. Accordingly, the Court finds Defendants' allegation of improper joinder in their Notice of Removal adequate and overrules Plaintiffs' first objection.

*Objection 2: Rule 736 and Waiver of the Right to Remove*

Plaintiffs also assert the Magistrate Judge "ignores certain Texas Procedural nuances concerning expedited foreclosures in determining that Defendants have not waived their right to remove[,]" arguing that the Court should consider the Original State Court Action and the Second State Court Action as a "single action for all purposes" and that the Court should realign the Parties "to reflect the reality of this litigation without the bizarre nature of Rule 736 influencing the Court's decision" (Dkt. #56 at 2-3). Plaintiffs contend that, if the Court does so, the Court then must find that Defendants participated substantively in the state court proceedings underlying this federal action and, accordingly, that Defendants waived their right to remove (Dkt. #56 at 2-3). Defendants contend to the contrary that the Original State Court Action was an "expedited

foreclosure application" wherein "[t]he only issue decided is the right of the applicant to obtain an order for foreclosure" and "not an ordinary lawsuit"—like the Second State Action—in which the Parties may "put[] in issue any matter related to the origination, servicing, or enforcement of the loan agreement . . ." (Dkt. #57 at 3-4 (citing Tex. R. Civ. P. 736.11(a))).

Rule 736 governs certain foreclosures of Texas real property; specifically, Rule 736 prescribes the procedures one must follow to obtain "an expedited order allowing foreclosure of [certain] lien[s]" on Texas real property. Tex. R. Civ. P. 736.1. Texas courts have found that Rule 736 contemplates two independent actions related to such foreclosures: (1) an application for expedited order of foreclosure and (2) a separate, original proceeding challenging the propriety of foreclosure under the relevant lien. *See, e.g.*, *Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 681-83 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (finding a "counterclaim that attempts to address the underlying merits of the applicant's conduct . . . is incongruent with the purposes of a Rule 736 proceeding"); *Steptoe v. JPMorgan Chase Bank, N.A.*, 464 S.W.3d 429, 432-33 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (finding in light of the special nature of Rule 736 expedited foreclosure proceedings that "it is evident . . . that a Rule 736 proceeding cannot be brought as a counterclaim in a borrower's suit against the lender"); *In re Dominguez*, 416 S.W.3d 700, 705-06 (Tex. App.—El Paso 2013, no pet.) (citing *Huston* for the proposition that "[a] mortgagor is not permitted to file a counterclaim to a Rule 736 expedited foreclosure proceeding and may only contest the right to foreclose in a separately-filed suit"). Federal courts in Texas have found likewise. *See, e.g.*, *Deutsche Bank Nat'l Trust Co. v. Ra Surasak Ketmayura*, No. A–14-CV-00931-LY-ML, 2015 WL 3899050, at *2-3 (W.D. Tex. June 11, 2015) (noting the special nature of a Rule 736 application for expedited foreclosure and finding "[t]he only issue that may be decided in [such proceeding] is whether the provisions of the security instrument entitle the

lender to sell the property using the procedures outlined in Texas Property Code § 51.002"); *Soin v. JPMorgan Chase Bank, N.A.*, No. H-14-1861, 2014 WL 4386003, at *2 (S.D. Tex. Sept. 4, 2014) (finding that an earlier filed application for expedited foreclosure under Rule 736 that the plaintiffs sought to dismiss under Rule 736.11 "ha[d] no effect on [defendants'] right to remove the 'separate, original proceeding' later filed by plaintiffs"); *Campos v. U.S. Bank Nat'l Ass'n*, No. 4:12-cv-2236, 2012 WL 5828619, at *4-5 (S.D. Tex. Nov. 13, 2012) ("[E]ven if Defendants originally moved to foreclose Plaintiffs' home, that does not turn the Defendants into the plaintiffs in this case.").

In light of these authorities, the Court rejects Plaintiffs' argument that the Court should consider the Original State Court Action and the Second State Court Action as one proceeding for purposes of waiver. Plaintiffs' counterclaim thesis, which posits that the separately filed Second State Court Action more accurately could (or should) be characterized as a "counterclaim" to Deutsche Bank's Original State Court Action, operates on the faulty assumption that the Original State Court Action is "an ordinary lawsuit" in which a party might have the opportunity to assert a counterclaim. *See Huston*, 359 S.W.3d at 681-82; *In re Dominguez*, 416 S.W.3d at 706. Moreover, Deutsche Bank did not waive its right to remove the Second State Court Action merely by filing an application for expedited foreclosure under Rule 736, *see Soin*, 2014 WL 4386003, at *2, and it did not morph itself into a plaintiff in this case thereby, *see Campos*, 2012 WL 5828619. The findings above further resolve Plaintiffs' objection to the Magistrate Judge's waiver finding. Plaintiffs' second objection is overruled.

*Objection 3: The Applicability of Equitable Tolling Doctrines*

Plaintiffs object finally that the Magistrate Judge failed to resolve any doubt about the Non-Diverse Defendants' liability in favor of Plaintiffs on remand. Plaintiffs specifically object that the Magistrate Judge "refused to apply even basic principles of equitable tolling in determining that the claims against the diverse [sic] parties lacked merit" (Dkt. #56 at 4-5). Plaintiffs argue that they "relied upon the greater knowledge of lawyers, title companies, and banks" in entering into the allegedly defective loan documents, for which they already once have sued. *See Priester v. JP Morgan Chase Bank, N.A.* (*Priester I*), 708 F.3d 667 (5th Cir. 2013).[7] Defendants argue that no equitable tolling doctrine applies here and that the Magistrate Judge found, in accord with *Priester I*, that Plaintiffs' claims against the Non-Diverse Defendants clearly are time-barred and thus cannot serve as a basis for the Non-Diverse Defendants' joinder in this case (Dkt. #57 at 5).

The Fifth Circuit found in *Priester I* that Plaintiffs' Texas Constitution claims were time-barred and that the doctrine of fraudulent concealment did not apply to toll their claims. 708 F.3d at 675-77. In its analysis, the Fifth Circuit found—with regard to Chase and Long Beach—that the doctrine of fraudulent concealment could not apply to toll Plaintiffs' claims against those defendants because Plaintiffs' allegations that those defendants could have concealed a nondisclosure did not comport with reality:

---

[7] So far as the Court can discern, this objection is to the Magistrate Judge's finding that the fraudulent concealment doctrine does not apply in this case (*see* Dkt. #55 at 12-14). The Court notes Plaintiffs do not specifically object to the Magistrate Judge's findings that Plaintiffs have no forfeiture claims against the Non-Diverse Defendants (Dkt. #55 at 14-16) or that the Common Defense Exception to a finding of improper joinder does not apply here (Dkt. #55 at 16-17).

> The Priesters argue that, even if a limitations period applies and accrued at the creation of the lien, Chase is estopped from asserting a limitations defense, because the originators of the loan "fraudulently concealed their illegal conduct . . . , tolling the statute of limitations." They base this argument on Section 50(a)(6)(M)'s requirement that notice of constitutional rights be given to homeowners twelve days before closing. They aver that defendants' lack of disclosure functioned as fraudulent concealment.
>
> The doctrine of fraudulent concealment estops defendants from raising limitations as a defense. Where a defendant has hidden evidence of harm from a plaintiff, he will not "be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.,* 933 S.W.2d at 6. Fraudulent concealment tolls limitations "until the claimant, using reasonable diligence, discovered or should have discovered the injury." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.,* 988 S.W.2d 746, 750 (Tex.1999). Fraudulent concealment has four elements: "(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception." *Holland v. Thompson,* 338 S.W.3d 586, 596 (Tex.App.-El Paso 2010, pet. denied).
>
> The first two elements are certainly met here. The constitutional violation is not challenged, and insofar as constructive knowledge or a "should have discovered" standard can be imposed on the Priesters, knowledge should be imputed to the defendants as well.
>
> There is no evidence, however, that the defendants used "deception" to conceal any constitutional violations. First, it would be impossible to conceal the fact that the closing occurred in the Priesters' living room. Second, the defendants did not "conceal" the fact that they did not provide the required constitutional notices. It is difficult to imagine how a party would conceal a lack of disclosure.

*Id.* at 676-77. Further, the Fifth Circuit found that, under Texas law, the "[m]ere failure to disclose a cause of action or mere concealment of a cause of action, when the defendant owes no duty to disclose is not fraudulent concealment." *Id.* at 677. The Fifth Circuit then concluded that "[b]ecause there was no evidence or allegation of the [Chase's or Long Beach's] attempting to conceal information, and because the facts that gave rise to any claims were obvious and not hidden, the doctrine of fraudulent concealment does not apply here to estop the lenders' assertion of the limitations defense." *Id.*

Although the Texas Supreme Court has arguably abrogated *Priester I*'s holding as to the accrual and limitations periods of the constitutional violations alleged in that case and here, *see Wood v. HSBC Bank USA, N.A.*, ___ S.W.3d ___, No. 14-0714, 2016 WL 2993923 (Tex. Dec. 8, 2015), and *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474 (Tex. 2016); *Feuerbacher v. Wells Fargo Bank*, No. 4:15-CV-59, 2016 WL 3669744, at *6 (E.D. Tex. July 11, 2016) (finding *Wood* addressed *Priester I*'s limitations holding but not its accrual holding), the Fifth Circuit's finding regarding equitable tolling is wholly determinative of Plaintiffs' present objection. To begin, the same facts underlie Plaintiffs' claims against the Non-Diverse Defendants of common law fraud, fraud by nondisclosure, negligent misrepresentation, and breach of contract, as did Plaintiffs' claims against Chase and Long Beach in the Original Federal Action, namely that the Non-Diverse Defendants acted alongside Chase and/or Deutsche Bank to induce Plaintiffs to sign documents in violation of the Texas Constitution. *Compare* (Dkt. #3 at 9-13), *with Priester I*, 708 F.3d at 677.

Further, the pendency of proceedings in the Original Federal Action does not provide a valid basis for tolling Plaintiffs' claims against the Non-Diverse Defendants. *See Morris v. Milligan*, No. 6:14cv54, 2014 WL 4463237, at *2 (E.D. Tex. Sept. 10, 2014) (finding under Texas law that a limitations period may only be tolled because of pending litigation "when the viability of the second cause of action depends upon the outcome of the first"). Because the Original Federal Action dealt only with Plaintiffs' claims of forfeiture (and given that Plaintiffs do not object to the Magistrate Judge's finding that Plaintiffs have no such claims against the Non-Diverse Defendants), the outcome of the Original Federal Action had no effect upon Plaintiffs' common law fraud, fraud by nondisclosure, negligent misrepresentation, and/or breach of contract

claims presented in the instant case.[8] Plaintiffs could have attempted to pursue these claims against the Non-Diverse Defendants independently of the Original Federal Action and would have borne no risk of parallel proceedings *on those claims* in federal court. In light of the foregoing, the Court finds the Magistrate Judge adequately applied the presumption in favor of remand and found properly that no equitable tolling doctrine applies in the present case. The Court overrules Plaintiffs' third objection.

## CONCLUSION

Having considered each of Plaintiffs' timely filed objections (Dkt. #56), each of Defendants' responses (Dkts. #57-59), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #55) as the findings and conclusions of the Court.

Accordingly, it is **ORDERED** that Plaintiff's Motion to Remand (Dkt. #8) is **DENIED**, and that the Non-Diverse Defendants—Cristobal Galindo, PC, Galindo Law & Title, Galindo Cristobal Title Services, Cristobal Galindo, Alamo Title Company, Kristen Tinsley—each be dismissed without prejudice.

---

[8] That Plaintiffs attempted to join the Non-Diverse Defendants in the Original Federal Action by seeking leave to amend their complaint in the district court proceedings does not change this analysis. The district court denied leave to amend, finding that "Plaintiffs [could] proceed against [the Non-Diverse Defendants] without concern about a parallel proceeding" given that the court dismissed all of Plaintiffs' claims. *Priester v. Long Beach Mortg. Co.*, No. 4:10CV461, 2011 WL 6116481, at *3 (E.D. Tex. Dec. 8, 2011), *aff'd* 708 F.3d 667. Though Plaintiffs sought diligently to preserve their rights with regard to Defendants' perceived violations of the Texas Constitution (and alleged defamation), Plaintiffs did not bring suit against the Non-Diverse Defendants for the alleged fraud and breach of contract until nearly six years after Plaintiffs admit they detected the fraud and/or breach.

It is further **ORDERED** that the Motion for Default Judgment (Dkt. #12), the Galindo Defendants' Motion to Dismiss (Dkt. #24), the Alamo Title Motion to Dismiss (Dkt. #26), the Tinsley Motion to Dismiss (Dkt. #27), and the Motion for Leave (Dkt. #52) each are **DENIED AS MOOT**.

**IT IS SO ORDERED**.
**SIGNED this 8th day of February, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE