# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JOHN PRIESTER, JR. and BETTIE PRIESTER | § § § § | |
| | § | Civil Action No. 4:16-CV-449 |
| v. | § | Judge Mazzant |
| | § | |
| LONG BEACH MORTGAGE COMPANY, et al. | § § § § | |

## MEMORANDUM OPINION AND ORDER AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

On March 5, 2018, the parties appeared before the Court for a trial of this case, at which time the Court heard evidence and argument of counsel. Upon a review of the record, the Court concludes that it erroneously denied summary judgment as to Defendants' judicial foreclosure counterclaim. As such, the Court reconsiders its Order on the summary judgment in this case.[1] However, even if the Court did not reconsider, after considering the evidence submitted at trial, the Court finds that Defendants are entitled to judicial foreclosure. As such, after the Court details its reconsideration of its prior Order, the Court alternatively considers the evidence submitted during trial.

## RECONSIDERATION

### I. BACKGROUND

This case arises out of a dispute regarding payments on a Home Equity Loan encumbering the property located at 1406 Oakwood Drive, Allen, Texas, 75013 (the "Property"). On June 6, 2016, Plaintiffs John and Bettie Priester (the "Priesters") initiated a lawsuit against Defendants

---

[1] The only issue that the Court reconsiders is the Court's ruling on Defendants' judicial foreclosure claim. The remainder of the Report and Order on Defendant's motion summary judgment remains intact.

Deutsche Bank National Trust Company, as Trustee, in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-1, Asset-Backed Certificates, Series 2006-1 and Select Portfolio Servicing, Inc. ("SPS"). The case was removed to the Eastern District of Texas on June 27, 2016 (Dkt. #1). On November 3, 2017, Defendants submitted a motion for summary judgment against Plaintiffs' affirmative claims and also in support of Defendants' counterclaims for judicial foreclosure and subrogation (Dkt. #143). Plaintiffs filed their response on November 22, 2017 (Dkt. #148). On November 30, 2017, Defendants filed a reply (Dkt. #152) and Plaintiffs filed a sur-reply on December 4, 2017 (Dkt. #155). On January 23, 2018, the Magistrate Judge entered an Order and Report and Recommendation ("the Report") on, among other motions, Defendants' motion for summary judgment, recommending the Court grant the requested relief except for Defendants' request for summary judgment on its counterclaim for judicial foreclosure (Dkt. #168). Both Plaintiffs and Defendants filed objections to the Report (Dkt. #185; Dkt. #183). Responses were likewise filed to both sets of objections (Dkt. #187; Dkt. #186). The Court overruled the objections and adopted the Report on February 28, 2018 (Dkt. #194).

## II.     LEGAL STANDARD

### A.  Reconsideration

"Federal Rule of Civil Procedure 54(b) provides that, in a case involving multiple claims or parties, 'any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities or fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2018 WL 276154, at *4 (N.D. Tex. Jan. 3, 2018) (quoting FED. R. CIV. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in

the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

## B. Motion for Summary Judgment

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence

of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## III. ANALYSIS

Defendants moved for summary judgment on its counterclaim for judicial foreclosure. Defendants argued that they met all of the elements for judicial foreclosure and that Plaintiffs should be estopped from arguing that the Loan does not comply with the Texas Constitution. In support of their arguments, Defendants submitted evidence of the elements of foreclosure, including: the Texas Home Equity Fixed/Adjustable Rate Note (the "Note") (Dkt. #143, Exhibit 2), the Texas Home Equity Security Instrument (the "Security Instrument") (Dkt. #143, Exhibit 3), the Texas Home Equity Affidavit and Agreement (the "Affidavit") (Dkt. #143, Exhibit 4), Notice of Intent to Accelerate and Demand for Payment from Chase Bank (Dkt. #143, Exhibit 5), Notice of Default and Intent to Accelerate from SPS (Dkt. #143, Exhibit 9), Notice of

Maturity/Acceleration of Texas Non-Recourse Loan (Dkt. #143, Exhibit 10), and SPS Payment History (Dkt. #143, Exhibit 11).

Plaintiffs responded that Defendants cannot foreclose on the Property because the Loan, which consists of the Note and the Security Instrument, did not comply with the requirements of the Texas Constitution. Specifically, Plaintiffs contend that the Loan was closed in the Plaintiffs' home rather than at the office of the lender, an attorney at law, or a title company in violation of § 50(a)(6)(N) and Plaintiffs were not provided the notice prescribed in § 50(g) at least twelve days before the Loan closing took place on November 25, 2005.[2] As noted in the Report, "Plaintiffs have not submitted any independent evidence in opposition to Defendants' Motion for Summary Judgment." (Dkt. #168 at p. 19). However, attached to Plaintiffs' Complaint (Dkt. #101) and also in the summary judgment record as an attachment to Plaintiffs' state court petition, which was an exhibit to Defendants' motion, are two letters. The first, a letter from Mosser Law, PLLC, Plaintiffs' counsel, to Long Beach Mortgage Company, which stated that the Loan did not comply with the applicable provisions of the Texas Constitution (Dkt. #143, Exhibit 14; Dkt. #101, Exhibit 2). The second, a letter from Mosser Law, PLLC, to Chase Fulfillment Center referring Chase to the first letter sent to Long Beach Mortgage Company (Dkt. #143 Exhibit 14; Dkt. #101, Exhibit 3). With that evidence, the Court looks to Defendants' claim for foreclosure.

"To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. XVI, § 50(a)(6) of the Texas Constitution; (3) plaintiffs are in default under the note and security

---

[2] In Plaintiffs' response to the motion for summary judgment, Plaintiffs state that there are certain terms that need to be included in the underlying loan documents to permit the lender to foreclose and that those terms are not in the note, although in a different section (Dkt. #148 at ¶ 39). To the extent this is an additional allegation that the Loan does not comply with the Constitution, the argument fails as it was not listed in Plaintiffs' cure letter (Dkt. #143, Exhibit 14) and Plaintiffs failed to object that it was not listed as another basis for invalidity in the Report (*See* Dkt. #168 at p. 29).

instrument; and (4) plaintiffs received notices of default and acceleration." *Portillo v. DLJ Mortg. Capital, Inc.*, No. H–13–3679, 2015 WL 729918, at *2 (S.D. Tex. Feb. 19, 2015) (citing TEX. PROP. CODE § 51.002; *Boren v. U.S. Nat. Bank Ass'n*, No. H–13–2160, 2014 WL 5486100, at *3 (S.D. Tex. Oct. 29, 2014)).  The Report correctly concluded that the summary judgment "evidence establish[ed] the default, requisite notice of acceleration, and the outstanding balance of the Loan." (Dkt. #168 at p. 29).

However, the Report recommended, and the Court initially adopted the conclusion, that the motion for summary judgment should be denied as to foreclosure because it concluded that Defendants did not "present any evidence to dispute Plaintiffs' allegations that the Loan failed to comply with Section 50(a) of the Texas Constitution" (Dkt. #168 at p. 30).  However, Defendants did in fact attach the Affidavit as evidence to its summary judgment.  The Affidavit states:

> **J.** The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner of a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution (the 'Notice').
>
> . . .
>
> **M.** The Extension of Credit is being closed, that is I am signing the loan documents, at the office of the Lender, an attorney at law, or a title company.

(Dkt. #143, Exhibit 4 at p. 3).  This establishes that the Loan was signed in accordance with the Texas Constitution as to the challenged provisions.

On the other hand, Plaintiffs did not submit any independent evidence on this issue.  The only piece of evidence that is part of the summary judgment record that could arguably be construed as evidence that the Loan did not comply with the Texas Constitution are the two letters from Plaintiffs' counsel (Dkt. #143, Exhibit 14).  However, "[m]ere denials of material facts,

unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice" at the summary judgment stage. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)).[3] Allegations made by Plaintiffs' counsel in a letter to Defendants' predecessors are the type of unsworn allegations that are not sufficient to overcome summary judgment. *See id.* Accordingly, the sufficient and uncontroverted evidence in the summary judgment record in this case demonstrates that the Loan complied with the challenged sections of the Texas Constitution. There is no genuine issue of material fact on the summary judgment record and the Court finds that summary judgment should be granted on the issue of foreclosure.

Even if the Court did not grant summary judgment based on the fact that the uncontroverted evidence established that the Loan complied with the Texas Constitution, the Court also reconsiders its decision on quasi-estoppel. In its motion for summary judgment, Defendants argued that Plaintiffs should be estopped from arguing the Loan did not comply with the Texas Constitution because at the time of closing, Plaintiffs signed the Affidavit, which states that the Loan complied with the Texas Constitution. The Report did not address Defendants' estoppel argument. Therefore, Defendants objected that

> the undisputed summary judgment evidence shows Plaintiffs signed a Home Equity Affidavit at closing in which they represented that the [L]oan was in compliance with the Texas Constitution. The Report took the Plaintiffs' pleadings in the Third Amended Complaint as true for the proposition that the Loan was constitutionally non-compliant, however Defendants provided *uncontested* summary judgment evidence that the Plaintiffs themselves acknowledged that the [L]oan was in compliance with the Texas Constitution in the affidavit they signed at closing.

---

[3] Defendants also objected to the Report because Defendants contend the Report "mis-applie[d] the burden of proof on summary judgment. Federal Rule of Civil Procedure 8(c) requires matters of 'avoidance' to be pleaded as an affirmative defense. Similarly, 'the party asserting an affirmative defense has the burden of both pleading and proving the defense." (Dkt. #183 at pp. 2–3) (citations omitted). As demonstrated above, even if the burden on this issue is on Defendants, Plaintiffs, as the "nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Therefore, regardless of who carries the burden on this issue, the uncontroverted evidence shows that the Loan complied with the Texas Constitution.

(Dkt. #183 at pp. 5–6) (emphasis in original).  The Court overruled the objection finding that the Defendants did not adequately brief the required elements of estoppel, specifically pointing to the element of detrimental reliance (Dkt. #194 at p. 10).  However, the Court cited the elements of equitable estoppel as opposed to quasi-estoppel (or estoppel by contract).  Therefore, alternatively the Court reconsiders its ruling on estoppel.

In response to Defendants' estoppel argument, Plaintiffs assert that Defendants cannot use estoppel against a home equity borrower.  In Texas,

> [a]s a general matter, the home equity lender has the burden to prove that a lien exists for some reason other than estoppel.  Only after that burden is discharged can there be a basis to support a claim of waiver or estoppel.  In other words, while a homestead claimant may, under certain circumstances, be estopped to deny the validity of an existing lien, "[a] lien cannot be estopped into existence.  Moreover, any failure by the lender to comply with the requirements for creating a constitutionally permissible lien against a homestead may not be waived or ratified by the homestead claimant."

*In re Chambers*, 419 B.R. 652, 670 (Bankr. E.D. Tex. 2009) (quoting *Hruska et ux. v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988)).  As already noted, Defendants, the home equity lender, proved through its motion for summary judgment and attached evidence that the Loan exists without using estoppel.  As such, because that burden is discharged, while they cannot use waiver or ratification, Defendants may use an estoppel argument to prevent Plaintiffs from denying the validity of the existing lien, the Loan.  *See id.*

"Estoppel by contract, a form of quasi-estoppel, applies to preclude a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Salas v. LNV Corp.*, 409 S.W.3d 209, 217 n.2 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Forney 921 Lot Dev. Partners, I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet denied)).

> The elements of quasi-estoppel are: (1) the party being estopped acquiesced to or benefited from a position inconsistent with his present position; (2) it would be unconscionable to allow the party being estopped to maintain his present position; and (3) the party being estopped had knowledge of all material facts at the time of the conduct on which estoppel is based.

*In re Pirani*, 579 B.R. 396, 406 (Bankr. E.D. Tex. 2017) (citing *In re Liao*, 553 B.R. 584, 607 (Bankr. S.D. Tex. 2016)).

The Priesters signed the Affidavit as part of the closing on the extension of credit (Dkt. #143, Exhibit 4) ("I understand that this Texas Home Equity Affidavit and Agreement is part of the Extension of Credit documentation."). The HUD-1 Settlement Statement, which shows that a large portion of the Loan went to pay off a prior lien, demonstrates that the Priesters accepted the benefits of the Loan from Long Beach Mortgage (Dkt. #143, Exhibit 12). The Affidavit states that the Loan was closed in the appropriate place, and that they received the required notice in the appropriate time frame. Plaintiffs now, after accepting the benefit of the extension of credit, argue contrary to the Affidavit, without any documentary evidence, that they did not receive the notice required by the Texas Constitution at least twelve days before the Loan closing took place and that the Loan closing took place in the Priesters' living room. Because the benefit has already been accepted, it is unconscionable to now challenge the validity of the extension of credit. *Enochs v. Brown*, 872 S.W.2d 312, 317 (Tex. App.—Austin 2003) *disapproved of on other grounds by*, *Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003).

Finally, the Priesters are presumed to have had knowledge of all material facts at the time they signed the Affidavit. "If no fraud is involved, one who signs an agreement without knowledge of its contents is presumed to have consented to its terms and is charged with knowledge of the agreement's legal effect; in those circumstances, a party's failure to read an instrument before signing it is not a ground for avoiding it." *Sosa v. Long Beach Mortg. Co.*, No. 03-06-00326-CV,

2007 WL 1711788, at *3 (Tex. App.—Austin 2007, no pet.) (citing *G-W-L, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex.1982), *overruled on other grounds by Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex.1987)). Therefore, Plaintiffs are presumed to know the contents.

As such, the Court agrees with Defendants' objection that the undisputed and uncontested summary judgment evidence shows that the quasi-estoppel should apply to this set of facts.[4]

## IV.    CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment on Defendants' counterclaim for judicial foreclosure (Dkt. #143) is hereby **GRANTED**.

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

However, even if the Court did not reconsider the Order on Defendants' Motion for Summary Judgment, after considering the evidence submitted at trial, the Court finds that Defendants are entitled to judicial foreclosure. On March 5, 2018, the parties appeared before the Court for a trial of this case, at which time the Court heard evidence and argument of counsel. During the trial, Plaintiffs objected to the testimony of Linda Holmes because they argued she had not been properly designated, which the Court took under advisement. Further, there were certain evidentiary objections that the Court either took under advisement or the parties re-urged in post-trial briefing. Accordingly, the Court first addresses the motion to strike and evidentiary objections, and then enters its Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52. Any finding of fact which constitutes a conclusion of law shall be deemed a conclusion of law, and any conclusion of law which constitutes a finding of fact shall be deemed a finding of fact.

---

[4] The Court does not hold that estoppel will or should apply in every judicial foreclosure case with a home equity affidavit, but with the current set of facts, the Court alternatively finds that estoppel applies.

## MOTION TO STRIKE LINDA HOLMES

The Court proceeded to trial on Defendants' counterclaim for judicial foreclosure on March 5, 2018.  The Court ordered the parties to "file pretrial materials no later than 5:00 p.m. on January 31, 2018."  (Dkt. #170).  On January 31, 2018, Defendants filed their pretrial materials, including their witness list, which listed "Corporate Representative Select Portfolio Servicing, Inc., Mark Syphus, or a similarly authorized corporate representative of Select Portfolio Servicing, Inc., depending on availability pending trial setting" and indicates that "the exact identification of SPS' corporate witness will be promptly supplied upon the Court's designation of a final trial date." (Dkt. #175 at p. 1; Dkt. #200, Exhibit B at p. 2).  Defendants did not supply the exact identification after the Court set the final trial date.  On March 5, 2018, Linda Holmes ("Holmes"), a case manager at Select Portfolio Servicing, Inc. ("SPS"), appeared to testify.  Plaintiffs objected to Holmes as a witness and moved to strike her testimony because she was not properly designated.

According to the Federal Rules, parties must provide "the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises . . ." prior to trial.  FED. R. CIV. P. 26(a)(3)(A)(i).  Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or harmless."  *Torres v. City of San Antonio*, No. SA:14-CV-555-DAE, 2014 WL 7339122 at *1 (W.D. Tex. Dec. 23, 2014).  When evaluating whether a violation of Rule 26 is harmless for purposes of Rule 37(c)(1), the Court looks to four factors: (1) the explanation for the failure to disclose; (2) the importance of the testimony/evidence; (3) potential prejudice to the opposing

party in allowing the testimony/evidence; and (4) the possibility of a continuance to cure such prejudice. *Id.*; *Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).

Here, Defendants admit that they failed to disclose Holmes's name, address, and telephone number as required by the Federal Rules, but maintain that the Court should permit her testimony because the failure to disclose this information was harmless. Plaintiffs assert that Defendants failure to disclose caused a great deal of harm to Plaintiffs and that harm cannot be cured.

As to the first factor, Defendants contend that they did not know who would testify until the trial time was set and, due to an oversight, Defendants failed to supplement the witness list after the identity was known. The Court finds that an oversight is not an adequate explanation for a failure to disclose; however, the late designation was not made with any ill intent. As such, this factor weighs slightly in favor of excluding Holmes.

Under the second factor, the Court must consider the importance of Holmes's testimony. However, "[t]he importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders." *Barrett v. A. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996). Here, both parties agree that Holmes's testimony is of the utmost importance. As such, this factor weighs in favor of allowing Holmes's testimony.

For the last two factors, the Court considers whether or not there is any prejudice and if a continuance could cure the prejudice. Plaintiffs maintain that they suffer great prejudice if her testimony is allowed because "they had no opportunity to prepare for the trial testimony." (Dkt. #208 at p. 14). Defendants contend that there is no prejudice "because the Plaintiffs received and were aware of every exhibit referenced by Ms. Holmes, and because Plaintiffs had the opportunity to conduct an examination of a corporate representative of SPS and/or Deutsche Bank as Trustee, but declined to do so." (Dkt. #203 at p. 3). While Plaintiffs did not know that Holmes

specifically would be the person testifying, Plaintiffs were on notice that an employee of SPS would be testifying. Further, Plaintiffs were well aware of the exhibits admitted based on Holmes's testimony.

After a review of the testimony, Holmes testified to facts known to any SPS employee who had access to SPS's books and records relating to mortgage loans that it services. There was nothing unique to Holmes's testimony that could not also have been discovered through the deposition of another SPS "corporate representative."[5] While Plaintiffs were not required to request a deposition of Holmes, which the Court agrees they could not have done because they did not know of her existence, Plaintiffs could have discovered the substance of her testimony from another witness, such as Mark Syphus. Plaintiffs failed to identify what exactly from Holmes's testimony came as an unreasonable surprise due to Defendants' failure to properly disclose the identification of this witness. Therefore, the Court finds that allowing Holmes's testimony does not prejudice Plaintiffs and there is no need for a continuance to cure any prejudice.

Accordingly, the Court finds the final two factors weigh in favor of allowing Holmes's testimony. Because three out of the four factors weigh in favor of allowing Holmes's testimony, the Court denies Plaintiffs' motion to strike.

## EVIDENTIARY OBJECTIONS

**Defendants' Exhibit 18**

At trial, Defendants offered Exhibit 18, the GMAC Deed of Trust. Plaintiffs objected to the exhibit because they assert it is not authenticated and contains hearsay. Defendants contend that the exhibit should not be excluded by the rule against hearsay because it is a public record that is excepted from the rule pursuant to Rule 803(8) and is authenticated as a public record pursuant

---

[5] Again, the Court acknowledges there was no "corporate representative" for the purposes of this trial.

to Rule 901(b)(7). Plaintiffs counter that Rule 901(b)(7) only applies to evidence about public records and, that to be self-authenticating, a public record needs to be an official document or a certified copy, and that this document is neither. As will be demonstrated throughout the Findings of Fact and Conclusions of Law, the Court does not use Exhibit 18 for its determinations on judicial foreclosure. Accordingly, the Court declines to rule on this objection.

**Judicial Notice**

During the trial, Plaintiffs sought to admit, and have the Court take judicial notice of, a registration statement filed with the Securities and Exchange Commission related to the 2006-1 certificate series. Defendants objected on the basis that Plaintiffs did not have the document and that the issue went to standing, which the Court already decided and therefore the document is irrelevant. Plaintiffs, in their post-trial brief, argue that the Court improperly denied taking judicial notice of the document. According to the Federal Rules of Evidence, the Court "must take judicial notice if a party requests it and the [C]ourt is supplied with the necessary information." FED. R. EVID. 201(c)(2). Plaintiffs did not supply the Court with the "necessary information", that is Plaintiffs did not provide the document for which they sought judicial notice. Moreover, even if the Court were to take judicial notice of the document, which was never supplied, it goes to an issue that has already been decided and is not relevant to the current proceedings. As such, the Court's ruling in trial stands.

**<u>FINDINGS OF FACT</u>**

**The Property**

1.      Plaintiffs own the real property located at 1406 Oakwood Drive, Allen, Texas 75013 (the "Property") (Defendants' Exhibit 1; Defendants' Exhibit 2).

2.     The Property is more particularly described as: LOT 10, BLOCK A, SUNCREEK 1, TRACT 3, AN ADDITION TO THE CITY OF ALLEN, COLLIN COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN CABINET J, SLIDE 586, MAP RECORDS, COLLIN COUNTY, TEXAS (Defendants' Exhibit 1; Defendants' Exhibit 2).

**Acquiring the Loan**

3.     On November 25, 2005, Plaintiffs obtained a Home Equity Loan (the "Loan"), which consists of the Texas Home Equity Fixed Adjustable Rate Note (the "Note") and Texas Home Equity Security Instrument (the "Security Instrument"), encumbering the Property in the amount of $180,000.00 (Defendants' Exhibit 1; Defendants' Exhibit 2).

4.     Plaintiffs additionally signed the Texas Home Equity Affidavit and Agreement ("the Affidavit") as part of closing the Loan.

**The GMAC Lien**

5.     On November 25, 2005, Plaintiffs executed a HUD-1 Settlement Statement (the "HUD-1") for the closing of the Loan on the Property with Long Beach Mortgage Company (Defendants' Exhibit 11).

6.     In conjunction with the closing of the Loan, the HUD-1 settlement statement shows that Plaintiffs' prior lender, GMAC Mortgage Corporation ("GMAC") was paid $156,152.59 from the proceeds of the Loan by Long Beach Mortgage Company as the payoff of a prior lien on the Property (Defendants' Exhibit 11).

7.     Plaintiffs made no payments towards the GMAC lien after it was paid off by the Loan (Trial Tr. at 130:6–14).

**History of the Loan**

8.    The original lender for Plaintiffs' Loan was Long Beach Mortgage Company (Defendants' Exhibit 1; Defendants' Exhibit 2).

9.    Long Beach Mortgage merged into Washington Mutual Bank. When Washington Mutual Bank failed, JP Morgan Chase Bank, N.A. ("J.P. Morgan") acquired all of the assets of Washington Mutual Bank, including the assets of Long Beach Mortgage, from the Federal Deposit Insurance Corporation.

10.    JP Morgan transferred the deed of trust to Defendant Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006-1 which subsequently filed an assignment placing the lien in the name of Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006-1, Asset Backed Certificates, Series 2006-1 (Defendants' Exhibit 6; Defendants' Exhibit 7).

11.    Defendant SPS is the current servicer of the Loan.

**The Affidavit**

12.    In connection with the Loan, Plaintiffs signed the Affidavit (Defendants' Exhibit 3).

13.    The Affidavit, in relevant part, states:

**J.** The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner of a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution (the 'Notice').

. . .

**M.** The Extension of Credit is being closed, that is I am signing the loan documents, at the office of the Lender, an attorney at law, or a title company.

. . .

### III. STATEMENT UNDER OATH
I hereby swear under oath that the representations and warranties referred to and set forth in Section I above are true and correct. I understand that this Texas Home Equity Affidavit and Agreement is part of the Extension of Credit documentation.

(Defendants' Exhibit 3 at pp. 2, 4).

14.     The Notary Public, Ms. Kristin Tinsley ("Tinsley"), was present at the time the Priesters signed the Affidavit (Trial Tr. 122:7–10).

15.     Tinsley explained the Affidavit to the Priesters but did not detail every line in the Affidavit (Trial Tr. 122:9-10, 131:3–10).

16.     Tinsley gave the Priesters the opportunity to read the Affidavit before signing it; however, the Priesters declined to read the entirety of the Affidavit (Trial Tr. 131:4–5).

17.     Tinsley signed the document and placed her notary stamp on the Affidavit on November 25, 2005, the same date that the Priesters signed the Note and the Security Instrument (Defendants' Exhibit 1; Defendants' Exhibit 2; Defendants' Exhibit3).

**Defendants' Use of the Affidavit**

18.     Defendants were not present at the Loan closing and did not have knowledge or the ability to determine whether the Plaintiffs' Loan was closed in their living room or whether Plaintiffs received the twelve-day notice (*See* Trial Tr. at 52:12–16).

19.     Defendants used the Affidavit and other like closing documents to establish the viability of the Loan when boarding it (*See* Trial Tr. at 51:25–52:16; 53:17–19).

**Default**

20.     The Priesters stopped making payments on the Loan in 2010 (Trial Tr. at 108:5).

21.     By November 18, 2013, Plaintiffs had been in default under the Loan for three years (Defendants' Exhibit 4; Defendants' Exhibit 10).

22.     On November 18, 2013, Defendants sent Plaintiffs a notice of default and intent to accelerate due to Plaintiffs' failure to make payments required under the Loan (Defendants' Exhibit 8).

23.     When Plaintiffs failed to cure their defaults, on November 10, 2014, Defendants sent a notice of acceleration (Defendants' Exhibit 9).

24.     Plaintiffs are currently due for the January 1, 2010 payment and all subsequent payments (Defendants' Exhibit 10).

25.     The balance due on the Loan as of November 1, 2017 is $325,551.35.

26.     Defendants have advanced $49,748.94 in taxes on the property in order to protect Defendants' lien interest (*See* Trial Tr. at 60:6).

**The First Lawsuit**

27.     Plaintiffs brought suit against Long Beach Mortgage Company, JPMorgan Bank, N.A., and JPMorgan Chase & Co. seeking declaratory relief and asserting claims for defamation, fraudulent concealment, exemplary damages, and attorneys' fees on October 26, 2010 in state court, which was removed to the Eastern District of Texas on November 19, 2010, *Priester v. Long Beach Mortgage Company, et al.*, 4:10-cv-641 ("*Priester I*").

28.     Plaintiffs in *Priester I* argued that the Loan was constitutionally void.

29.     The Court dismissed Plaintiffs' claims in *Priester I* because their claims were barred by the applicable statute of limitations.

## CONCLUSIONS OF LAW

1.     The Court has jurisdiction over the parties and over the subject matter of this action based upon diversity of citizenship.  28 U.S.C. § 1332.

2.	Texas substantive law applies to this action as well as the Federal Rules of Civil Procedure.

3.	"To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. XVI, § 50(a)(6) of the Texas Constitution; (3) plaintiffs are in default under the note and security instrument; and (4) plaintiffs received notices of default and acceleration." *Portillo v. DLJ Mortg. Capital, Inc.*, No. H–13–3679, 2015 WL 729918, at *2 (S.D. Tex. Feb. 19, 2015) (citing TEX. PROP. CODE § 51.002; *Boren v. U.S. Nat. Bank Ass'n*, No. H–13–2160, 2014 WL 5486100, at *3 (S.D. Tex. Oct. 29, 2014)).

4.	Defendants are the current holder and servicer of the note and deed of trust.

5.	Mr. Priester credibly testified that the Priesters signed the Note, the Security Instrument, and the Affidavit. Defendants submitted the Note, the Security Instrument, and the Affidavit as evidence to support Mr. Priester's testimony. Further, Mr. Priester credibly testified and Defendants submitted documentary evidence that the Priesters stopped making payments on the Note in 2010. Moreover, Holmes credibly testified that SPS sent the Priesters a notice of default and a notice of acceleration and Defendants submitted documentary evidence of the Notice of Default and Notice of Acceleration.

**Res Judicata Does Not Bar Plaintiffs from Arguing the Loan Does Not Comply with the Constitution**

6.	The only remaining issue, and the only contested element of foreclosure, is "the debt is secured by a lien created under Art. XVI, § 50(a)(6) of the Texas Constitution." *Portillo*, 2015 WL 729918, at *2 (citing TEX. PROP. CODE § 51.002; *Boren*, 2014 WL 5486100, at *3). Defendants first argument as to this issue is that Plaintiffs are barred from asserting the Loan did

not comply with Article XVI, § 50(a)(6) of the Texas Constitution because of the Court's decision in *Priester I*.

7.      The doctrine of res judicata, read in the broadest sense of the term, embraces two distinct preclusion concepts: claim preclusion, often termed "res judicata," and issue preclusion, often referred to as "collateral estoppel." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994). Claim preclusion, or "pure" res judicata, is the "venerable legal canon" that ensures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits. *Medina v. I.N.S.,* 993 F.2d 499, 503 (5th Cir. 1993).

8.      "Under Texas law, three elements must be satisfied in order for res judicata to be appropriate: '(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.'" *Carrasco v. City of Bryan, Tex.*, No. H-11-662, 2012 WL 950079, at *3 (S.D. Tex. March 19, 2012) (quoting *Berkman v. City of Keene*, No. 3:10-cv-2378-B, 2011 WL 3268214 (N.D. Tex. July 29, 2011)); *see also Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1252–54 (5th Cir. 1991). If these three conditions are satisfied, res judicata prohibits either party from raising any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action. *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990).

9.      This action (the second action) is not based on the same claims as were raised or could have been raised in *Priester I* (the first action). In *Priester I*, Plaintiffs brought suit against Long Beach Mortgage Company, JPMorgan Bank, N.A., and JPMorgan Chase & Co. seeking declaratory relief and asserting claims for defamation, fraudulent concealment, exemplary damages, and attorneys' fees. Here, in the second action, Plaintiffs are asserting a defense that the

Loan is not compliant with the Constitution as a defense to Defendants' claim for judicial foreclosure. This is not the exact same claim that was asserted in *Priester I*. Moreover, Defendants did not assert their claim for judicial foreclosure in *Priester I*. Accordingly, the defense could not have been raised in *Priester I* because there was nothing to defend against.

10.     Thus, res judicata, or claim preclusion, does not act as a bar in this case.

11.     Issue preclusion, or collateral estoppel, in contrast, promotes the interests of judicial economy by treating specific issues of fact or law that are validly and necessarily determined between two parties as final and conclusive. Issue preclusion is appropriate only if the following four conditions are met: (1) the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (2) the issue must have been fully and vigorously litigated in the prior action; (3) the issue must have been necessary to support the judgment in the prior case; and (4) there must be no special circumstance that would render preclusion inappropriate or unfair. *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–32 (1979)).

12.     While the identical issue was raised in *Priester I*, the issue was not fully litigated in *Priester I*. Although the Fifth Circuit stated that the district court decided the Loan was valid in *Priester I*, *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 677 (5th Cir. 2013), upon looking back at *Priester I*, the issue of whether or not the Loan is constitutionally valid was never fully litigated. The Court dismissed Plaintiffs' affirmative claims because they were barred by the applicable statute of limitations. Indeed, the Report and Recommendation, which was adopted by the Court, pointed out that

> [a]lthough the Court holds that Plaintiffs' claims are barred by the statute of limitations, some question still exists in the Court's opinion as to the validity of the loan. If the closing of the loan violated the Texas Constitutional provisions, and the Defendants have not cured the loan under the available cure provision, then the

traditional enforcement remedies may not be available to Defendants. The simple passing of the statute of limitations period may not be sufficient to cure a home equity loan obtained in violation of the Texas Constitution. Thus[,] a question arises whether Chase could ever foreclose a loan obtained in violation of the Texas Constitution. However, the Court declines to consider this issue at this time, since it is not raised before the Court.

*Priester I*, 2011 WL 6116491, at *6 n.2 (E.D. Tex. Oct. 13, 2011), *report and recommendation adopted by*, 2011 WL 6116481 (E.D. Tex. Dec. 8, 2011).

13.     Thus, collateral estoppel, or issue preclusion, does not apply in this case and the Priesters are not barred by the decision in *Priester I*.

**The Priesters are Estopped from Arguing the Loan Does Not Violate the Texas Constitution**

14.     Defendants additionally argue that Plaintiffs should be estopped from arguing that the Loan is constitutionally void because they signed the Affidavit, which represented that the Loan complied with the Texas Constitution and Defendants relied on that representation when boarding the Loan.

15.     In Texas,

[a]s a general matter, the home equity lender has the burden to prove that a lien exists for some reason other than estoppel. Only after that burden is discharged can there be a basis to support a claim of waiver or estoppel. In other words, while a homestead claimant may, under certain circumstances, be estopped to deny the validity of an existing lien, "[a] lien cannot be estopped into existence. Moreover, any failure by the lender to comply with the requirements for creating a constitutionally permissible lien against a homestead may not be waived or ratified by the homestead claimant."

*In re Chambers*, 419 B.R. 652, 670 (Bankr. E.D. Tex. 2009) (quoting *Hruska et ux. v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988)).

16.     However, it is of note that "[t]he Plaintiffs have the burden to establish that certain constitutional requirements were not met." *Id.* at 671 (citations omitted); *Wilson v. Aames Capital Corp.*, No. 14-06-00524-CV, 2007 WL 3072054, at *1 (Tex. App.—Houston [14th Dist.] 2007,

no pet.) ("If anything, judicial economy would dictate that a failure to comply with any of these [Constitutional] requirements is in the nature of an affirmative defense so that judicial resources are spent litigating the few requirements that are contested rather than the many that are not.").

17.     As already noted, Defendants, the home equity lender, proved that the Loan exists without using estoppel.  As such, because that burden is discharged, while they cannot use waiver or ratification, Defendants may use an estoppel argument to prevent Plaintiffs from denying the validity of the existing lien, the Loan.

18.     "Estoppel by contract, a form of quasi-estoppel, applies to preclude a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Salas v. LNV Corp.*, 409 S.W.3d 209, 217 n.2 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Forney 921 Lot Dev. Partners, I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet denied)).

> The elements of quasi-estoppel are: (1) the party being estopped acquiesced to or benefited from a position inconsistent with his present position; (2) it would be unconscionable to allow the party being estopped to maintain his present position; and (3) the party being estopped had knowledge of all material facts at the time of the conduct on which estoppel is based.

*In re Pirani*, 579 B.R. 396, 406 (Bankr. E.D. Tex. 2017) (citing *In re Liao*, 553 B.R. 584, 607 (Bankr. S.D. Tex. 2016)).

19.     The Priesters signed the Affidavit as part of the closing on the extension of credit. Mr. Priester credibly testified that the Priesters accepted the extension of credit from Long Beach Mortgage.

20.     The Affidavit stated that the Loan was closed in the appropriate place, and that they received the twelve-day notice.  Plaintiffs now, after accepting the benefit of the extension of credit, argue, contrary to the Affidavit, that they did not receive the notice required by the Texas

Constitution at least twelve days before the Loan closing took place and that the Loan closing took place in the Priesters' living room. Because the benefit has already been accepted, it is unconscionable to now challenge the validity of the extension of credit. *Enochs v. Brown*, 872 S.W.2d 312, 317 (Tex. App.—Austin 2003) *disapproved of on other grounds by*, *Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003).

21.     As an additional element of unconscionability in this case, the only evidence Plaintiffs have offered to contradict the Affidavit is Mr. Priester's testimony. The Priesters have no documentary evidence to suggest that their prior sworn testimony was not truthful and should be disregarded.

22.     To further add to the unconscionability in this case, Holmes credibly testified that Defendants relied on the Affidavit to determine the viability of the Loan when boarding it. Although reliance is not a required element of quasi-estoppel, *Salas*, 409 S.W.3d at 217 n.2 (citing *Forney 921 Lot Dev. Partners, I, L.P.*, 349 S.W.3d at 268), under this set of facts, reliance makes Plaintiffs' challenge to the Loan's validity further unconscionable.

23.     Finally, the Priesters are presumed to have had knowledge of all material facts at the time they signed the Affidavit. Mr. Priester credibly testified that Tinsley explained the document to the Priesters but did not tell them every detail of the Affidavit. However, he also credibly testified that Tinsley gave the Priesters an opportunity to read the entire document and they chose not to read through the Affidavit.

24.     Moreover, "[i]f no fraud is involved, one who signs an agreement without knowledge of its contents is presumed to have consented to its terms and is charged with knowledge of the agreement's legal effect; in those circumstances, a party's failure to read an instrument before signing it is not a ground for avoiding it." *Sosa v. Long Beach Mortg. Co.*, No.

03-06-00326-CV, 2007 WL 1711788, at *3 (Tex. App.—Austin 2007, no pet.) (citing *G-W-L, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex.1982), *overruled on other grounds by Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex.1987)).

25.　　Plaintiffs did not argue and the Court determines that there is no basis for a finding of fraud in this case.

26.　　Plaintiffs did argue that Tinsley did not sign the document or place the notary stamp on the Affidavit in the Priesters presence and that she did not administer the oath.  However, the Affidavit contains a written oath (Defendants' Exhibit 3 at p. 4).  Moreover, the Court finds convincing Mr. Priester's testimony that Tinsley was with the Priesters when they signed the Affidavit and that she signed and dated the Affidavit on the same day as the date contained on the Note and the Security Instrument.  Accordingly, the Court finds that the Affidavit was not procured by fraud and is a valid document.  Therefore, Plaintiffs are presumed to know the contents.

27.　　Plaintiffs are estopped from arguing that the Loan does not comply with Article XVI, Section 50 of the Constitution based on the Affidavit.

28.　　Because Defendants proved all the elements of their claim, the Court finds that Defendants are entitled to judicial foreclosure on the Property due to the uncured default.

**The Weight of the Evidence Demonstrates that the Loan was Valid**

29.　　However, if the Priesters are not estopped from arguing the Loan does not comply with the Constitution, the Court was presented with conflicting evidence as to whether the Loan complied with the Texas Constitution: on one side, testimony from Mr. Priester. On the other side, the Affidavit signed by the Priesters.

30.　　The Affidavit was signed as part of the closing of the Loan.  The Affidavit was signed on the same day as the other documents.  Tinsely explained what the Affidavit was to the

Priesters, although not line by line. The Priesters were given the chance to the read the Affidavit before signing the Affidavit.

31.     Five years after the Loan was signed, for the first time, the Priesters made the allegations that they did not receive the required notice twelve days prior to closing the Loan and that they signed the Loan in their home as opposed to another place designated by the Texas Constitution. The Court does not find it credible that five years after signing several closing documents for a loan, a person would accurately remember not receiving a certain notice a specific amount of time prior to signing the loan. Accordingly, the Court finds that Mr. Priester's testimony was not credible as to this point. While the Court does find possible a person could remember where a loan was signed five years after signing it, because Mr. Priester's credibility is already tarnished with the Court, his testimony does not outweigh the other evidence presented.

32.     Therefore, even if Plaintiffs are not estopped from making the argument, the weight of the evidence suggests that the Loan complied with the Texas Constitution and is not void.

33.     Because Defendants proved all the elements of their claim, the Court finds that Defendants are entitled to judicial foreclosure on the Property due to the uncured default.

**Subrogation**

34.     The Magistrate Judge recommended, and the Court adopted a finding that Defendants proved their equitable subrogation claim. Further, the Court found that Defendants sufficiently proved their contractual subrogation claim.

35.     However, now that the Court finds that Defendants are entitled to judicial foreclosure on the Property, Defendants may not have a double recovery. As such, Defendants cannot recover on their alternative theories of contractual or equitable subrogation.

**Conclusion**

36.     In conjunction with these Findings of Facts and Conclusions of Law, the Court will enter a Final Judgment allowing for the foreclosure of the Property.

**SIGNED this 18th day of September, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE